IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CLIFFORD EARL ATCHISON, SR., )
)
    Plaintiff, )
)
v. ) CIVIL ACTION NO. 16-0611-MU
)
NANCY A. BERRYHILL, )
Acting Commissioner of Social )
Security,[1] )
)
    Defendant. )

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Cliffford Earl Atchison, Sr., brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI"), based on disability, under Title XVI of the Act. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 20 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, … order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See also* Doc. 22. Upon consideration of the administrative record, Atchison's filings, the

---

[1] Nancy A. Berryhill is the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Nancy A. Berryhill is substituted as the Acting Commissioner in lieu of Acting Commissioner Carolyn W. Colvin as the defendant in this action.

Commissioner's brief, and the argument presented at the hearing conducted on September 14, 2017, it is determined that the Commissioner's decision denying benefits should be affirmed.[2]

## I. PROCEDURAL HISTORY

Atchison applied for DIB, under Title II of the Act, 42 U.S.C. §§ 423 - 425, and for SSI, based on disability, under Title XVI of the Act, 42 U.S.C. §§ 1381-1383d, in October of 2014, alleging disability beginning on December 31, 2013. (Tr. 179-187). At the hearing before the ALJ, he amended the onset date to March 31, 2015. (Tr. 37). His application was denied at the initial level of administrative review on April 13, 2015. (Tr. 82). On May 1, 2015, Atchison requested a hearing by an Administrative Law Judge (ALJ). (Tr. 94-95). After an initial hearing on January 14, 2016, and a supplemental hearing on July 7, 2016, the ALJ issued an unfavorable decision finding that Atchison was not under a disability from the date the application was filed through the date of the decision, August 2, 2016. (Tr. 29-33, 34-61, 11-23). Atchison appealed the ALJ's decision to the Appeals Council, and, on October 6, 2016, the Appeals Council denied his request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

After exhausting his administrative remedies, Atchison sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1). The

---

[2] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 20. ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

2

Commissioner filed an answer and the social security transcript on March 15, 2017. (Docs. 13, 14). Both parties filed briefs setting forth their respective positions, and oral argument was held on September 14, 2017. (Docs. 16, 17, 21). The case is now ripe for decision.

## II. CLAIM ON APPEAL

Although Atchison, who was proceeding *pro se* before this Court, did not clearly enunciate the grounds for his appeal, the Court gleans from his filings and argument at the hearing that his claim on appeal is that the ALJ's decision that he was not disabled was not based on substantial evidence because the ALJ did not properly consider the medical evidence supporting his claim that he is physically and mentally unable to work. (Doc. 16 at p. 1; Doc. 21).

## III. BACKGROUND FACTS

Atchison was born on March 31,1965, and was 49 years old at the time he filed his claim for benefits. (Tr. 179). Atchison alleged disability due to severe gastrointestinal issues and an anxiety disorder. (Tr. 180). He graduated from high school, and after high school, he received training in pipefitting and welding. (Tr. 40). He worked as a pipefitter for approximately 15 to 20 years. (Tr. 40-41). Atchison last worked in the beginning of 2014. (Tr. 38). During the relevant time period, Atchison lived with his uncle and his parents, he handled his own personal care, made simple meals, went out for walks, performed household chores, helped his elderly parents and uncle, went grocery shopping, to church, and to doctor's appointments, enjoyed reading and watching TV, and was able to pay bills, count change, handle a savings account, and use a checkbook/money

order. (Tr. 45-48, 276-282). After conducting a hearing, the ALJ made a determination that Atchison had not been under a disability during the relevant time period, and thus, was not entitled to benefits. (Tr.11-23).

## IV. ALJ'S DECISION

After considering all of the evidence, the ALJ made the following findings that are relevant to the issues presented in her August 2, 2016 decision:

> **3. The claimant has the following severe impairments: irritable bowel syndrome/gastro esophageal reflux disease, abdominal pain, and anxiety (20 CFR 404.1520(c) and 416.920(c)).**
>
> During the period of adjudication, the claimant has received diagnosis and treatment for the aforementioned impairments (See Exhibits 2F, 3F, 4F, 5F, 6F, 7F, 8F, and 9F). These impairments are severe because they cause more than minimal limitations in the claimant's ability to perform a variety of basic work activities for the required durational period.
>
> The undersigned has considered and gives partial weight to the respective January and April 2015 DDS opinions of Russell March, M.D., and Harold Veits, M.D., who reviewed the evidence of record and respectively indicated that the claimant's physical and mental impairments were not severe in nature (Exhibits 3A and 4A). Although these opinions are generally consistent with the overall evidence of record, the undersigned views the evidence of record in a light most favorable to the claimant and determines that the aforementioned impairments are severe.
>
> The evidence of record from the relevant period also documents the claimant's complaints, diagnoses, and/or treatment for heart problems and hypertension (See Hearing Testimony and Exhibits 5E, 6F, 7F, 8F, and 9F). However, a thorough review of the overall evidence reveals that the record does not establish that these impairments have placed more than a minimal limitation on his ability to perform basic work activities for the required durational period. The claimant testified to ongoing heart-related problems, as well as elevated blood pressure readings, and the record includes evidence of elevated blood

4

pressure readings (Hearing Testimony and Exhibits 6F, 7F, 8F, and 9F). The record also includes, however, normal findings with regard to the claimant's heart and lungs on multiple occasions, including normal blood pressure readings, lungs that were clear to auscultation, and his heart with a regular rate and rhythm (Exhibits 2F, 4F, 7F, 8F, and 9F). Additionally, a September 2015 x-ray of the claimant's chest revealed completely normal findings (Exhibit 7F).

The undersigned has considered the aforementioned impairments singly and in combination and determines that the overall evidence fails to prove that they have placed more than a minimal limitation on his ability to perform basic work activities for the required durational period. As a result, they are not severe impairments (20 CFR 404.1509, 404.1520(c), 416.909, and 416.921).

Although the aforementioned impairments are not severe, under 20 CFR 404.1523 and 20 CFR 416.923, the undersigned must consider the combined effect of all the claimant's impairments on his ability to function without regard to whether any such impairment, if considered separately, would be of sufficient severity. The undersigned has done so and, although the aforementioned impairments are not severe, the limitations in the residual functional capacity in Finding 5, below, consider any functional limitations resulting from the claimant's nonsevere impairments or the combination thereof.

Any other diagnosis, ailment, or condition not specifically set out herein is both not severe and acute in nature or otherwise quickly resolved and is not expected to lead to any work restrictions that satisfy the required durational period.

**4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart 1P, Appendix 1(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

All listings were analyzed. The claimant's severe impairments have been considered individually and in combination, and these impairments do not meet or equal any of the medical listings.

Further, there are no acceptable medical sources that treated him, examined him, or examined his records who have opined that his impairments meet or medically equal a listing.

Although gastro-esophageal reflux disease/abdominal pain are not specifically listed in 20 CFR Part 404, Subpart P, Appendix 1, these impairments affect the claimant's digestive system and a thorough review of the evidence of record establishes that the claimant's gastro esophageal reflux disease does not meet any of the criteria of Medical Listing 5.00, *et al.,* for the adult digestive system. Therefore, the claimant's abdominal pain/ gastro esophageal reflux disease fail to meet or equal a listed impairment.

* * *

The severity of the claimant's mental impairment does not meet or medically equal the criteria of listing 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has mild restriction. The claimant notes that he is generally able to perform his personal care and has appeared properly groomed and dressed on occasion (See Exhibits 9E and 3F). He watches television, prepares meals, performs household chores, and helps care for his family members (Hearing Testimony and Exhibits 9E, 3F, and 8F). He shops, attends church, and handles his own finances (Exhibits 9E, 3F, and 8F). In April 2015, Harold Veits, M.D., performed a State-sponsored review of the evidence of record and rendered a psychiatric review technique (PRT) in which he indicated that the claimant's impairments cause mild limitation in his activities of daily living (Exhibits 3A and 4A). Dr. Veits is familiar with Social Security law and regulations and his opinion regarding the claimant's activities of daily living is consistent with

6

the overall evidence, including the claimant's admitted and indicated activities and abilities, so it is afforded great weight. Thus, the claimant's admitted activities and demonstrated abilities indicate that his mental impairments impose no more than mild difficulties on his activities of daily living.

In social functioning, the claimant has moderate difficulties. The claimant notes on various occasions that he operates in a fairly isolated manner and has problems interacting with others (Hearing Testimony and Exhibits 9E and 13E). He also indicates, however, that he lives with his parents and takes care of his uncle, shops, and attends church, and notes no specific problems with these interactions (Hearing Testimony and Exhibits 9E and 3F). Additionally, he notes no problems getting along with others, no problems getting along with authority figures, and notes he has never been fired or laid off for an inability to get along with others (Exhibit 9E). In his April 2015 PRT, Dr. Veits indicated that the claimant's impairments cause mild limitation in his social functioning (Exhibits 3A and 4A). As noted above, Dr. Veits is familiar with Social Security law and regulations and his opinion regarding the claimant's social functioning is consistent with the overall record, including the aforementioned admitted and indicated activities and abilities, so it is afforded great weight. However, the undersigned views the evidence of record in a light most favorable to the claimant, and determines that the claimant's mental impairments cause moderate impact in his social functioning. Accordingly, the claimant's admitted activities and demonstrated abilities are significant and, while his mental impairments may impose some difficulties on his social functioning, they are no more than moderate difficulties.

With regard to concentration, persistence or pace, the claimant has mild difficulties. The claimant's admitted and indicated activities and abilities include a wide range of concentration-intensive activities, which include performing household chores, performing yard work, caring for his parents and uncle, and watching television (Hearing Testimony and Exhibits 9E and 3F). Additionally, the claimant has testified and indicated that he is able to drive, shop, and handle his own finances (Hearing Testimony and Exhibits 9E, 3F, and 8F). At the March 2015 consultative psychological examination performed by Thomas Bennett, Ph.D., the claimant performed concentration-intensive activities that included serial sevens, performing mathematical

calculations, repeating digits forward and backward, recalling objects after 5 minutes, and counting and spelling backward (Exhibit 3F). In his April 2015 PRT, Dr. Veits indicated that the claimant's impairments cause mild limitation in his concentration, persistence, and pace (Exhibits 3A and 4A). Again, Dr. Veits is familiar with Social Security law and regulations, and his opinion regarding the claimant's concentration, persistence, or pace is consistent with the overall record, including the claimant's aforementioned activities and abilities, so it is afforded great weight. Thus, the claimant's admitted activities and demonstrated abilities indicate that his mental impairments impose no more than mild difficulties on his concentration, persistence, and pace.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. Although the record does document mental impairment diagnoses, a thorough review of the record reveals that it is devoid of ongoing mental health treatment, hospitalizations, or episodes of decompensation that have been of extended duration, and the claimant indicated to Dr. Bennett that he had not received mental health treatment (See Exhibits 3F, 4F, 5F, 6F, 7F, 8F, and 9F). In his April 2015 PRT, Dr. Veits indicated that the claimant has not experienced episodes of decompensation that have been of extended duration (Exhibits 3A and 4A). Again, Dr. Veits is familiar with Social Security law and regulations and his opinion regarding episodes of decompensation of extended duration is consistent with the overall record, so it is given great weight.

Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. There is no evidence that the claimant has experienced an extended episode of decompensation since the alleged onset date, that a minimal increase in mental demands or change in the environment would cause him to decompensate, or that the claimant is unable to function outside of a highly supportive living arrangement (See Exhibits 9E and 3F). Dr. Veits indicated

that the "paragraph C" criteria were not satisfied, and his opinion has been given great weight because it is consistent with the overall evidence of record (Exhibits 3A and 4A).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except he is limited to occasional contact with the public, coworkers, and supervisors.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 96-4p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

* * *

The claimant alleges he is unable to work due to an anxiety disorder, acid reflux, and irritable bowel syndrome (Exhibits 4E and 5E). He notes body aches, problems overheating, and notes that his heart races when he has build-ups (Exhibit 5E). He also has body pain, bloating, gas build-up, and occasional vomiting, which preclude him from performing his normal activities (Exhibit 8E). He indicates that his impairments affect his ability to sleep, perform personal care, prepare meals, perform household chores, perform yard work, drive, perform hobbies, and socialize,

as well as lift, squat, bend, stand, reach, and walk (Exhibit 9E). He is limited in his ability to walk prior to resting and has problems handling stress and changes in routine (Exhibit 9E). On appeal, the claimant noted that his anxiety attacks were becoming stronger and more frequent, and his abdominal pain had worsened (Exhibit 13E).

At the July 2016 hearing, the claimant testified that he stopped working because of constant stomach problems and anxiety, which prevented him from maintaining production levels at the shipyard (Hearing Testimony). He takes mental health medications, but his anxiety causes him isolation, thus he avoids parties. He has tried to work but repeated illnesses have caused him to miss work. He notes symptoms that include a fever, constant stomach pain, and vomiting and nausea, which cause him to pass out once per week. He can stand 10 to 15 minutes, walk 5 minutes, and lift very little weight for one-third of the workday. He suffers from weakness, fear of others, hallucinations, and panic attacks 2 to 3 times per day. He lies down 2 to 3 hours per day and sleeps about half of that time (Hearing Testimony).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of her [sic] alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

A review of the evidence of record includes treatment notes that predate the relevant period of adjudication and document the claimant's complaints of abdominal pain, fever, weight loss, vomiting, flank pain, and reflux, and resulted in diagnoses of gastro esophageal reflux disease, nausea, and abdominal pain (Exhibits 1F and 2F). These records also include, however, examination findings with regard to the claimant's heart, lungs, and extremities, as well as normal behavior, affect, and mood (Exhibits 1F and 2F).

As for those records within the proper period, the record includes multiple complaints of abdominal pain, reflux, epigastric pain, flank pain, fever, weight loss, fatigue, dizziness, restlessness, and syncopal episodes (Exhibits 2F, 4F, 5F, 6F,

7F, 8F, and 9F). These records include examination findings of abdominal tenderness to palpitation, which has led to diagnoses of gastro esophageal reflux disease, abdominal pain, epigastric pain, and syncope (Exhibits 2F, 4F, 5F, 6F, 7F, 8F, and 9F). Records also note the claimant's physical abilities despite these complaints and diagnoses, which includes performing activities of daily living, household chores, and performing yard work, as well as shopping and attending church (See Exhibit 3F). Additionally, the record includes a wealth of normal examination findings, including evidence that the claimant was not in acute distress, had normal lungs and a normal heart with regular rate and rhythm, normal musculoskeletal system findings, and no edema (Exhibits 2F, 7F, 8F, and 9F). Specifically, consultative examination findings note that the claimant was able to sit comfortably, get on and off the examination table without difficulty, tie and untie his shoes, and had negative straight leg raise tests, normal senses and reflexes, and normal grip strength (Exhibit 8F).

The aforementioned objective findings and the claimant's admissions and activities establish that the overall evidence of record is inconsistent with his allegations and undermine any alleged disabling limitation resulting from his irritable bowel syndrome/gastro esophageal reflux disease, and abdominal pain. Although the aforementioned records document the claimant's complaints, diagnoses, and treatment of these impairments, a careful review of the overall evidence of record also reveals a wealth of relatively normal physical examination findings that are simply inconsistent with a determination that the claimant is unable to work. Additionally, the claimant's admitted and indicated activities and abilities are also inconsistent with his allegations of completely disabling symptomology. He notes on various occasions, including at the hearing, that he is able to care for his parents and his uncle, which entails preparing meals, driving, and shopping, as well as more vigorous activities such as performing household chores including laundry, and performing yard work (Hearing Testimony and Exhibits 9E, 3F, and 8F).

Thus, the undersigned determines that the overall evidence of record is inconsistent with the claimant's allegations regarding the intensity, duration, and persistence of his symptomology.

Accordingly, the aforementioned objective findings, including the

relatively normal physical examination findings from the February 2016 consultative examination, as well as the claimant's admitted activities and abilities, including performing household chores and yard work, all indicate that the claimant's symptomology resulting from his irritable bowel syndrome/gastro esophageal reflux disease, and abdominal pain are not completely disabling. However, the undersigned notes that the claimant's occasional symptomology can reasonably be expected to cause some limitations to his ability to function, and has accordingly limited him to a light exertional level. This limitation properly accommodates his irritable bowel syndrome/gastro esophageal reflux disease, and abdominal pain.

Turning to physical opinion evidence, the undersigned has considered and gives considerable weight to the February 2016 consultative opinion of Elmo Ozment, M.D., who performed a state-sponsored examination of the claimant and indicates that the claimant can perform a wide range of work at the medium exertional level (Exhibit 8F). The undersigned notes that Dr. Ozment's opinion is generally consistent with the relatively normal findings from his examination of the claimant, which included the ability to mount and dismount the examination table without difficulty, put on and remove his shoes, and ambulate without problems or hand-held devices. Again, however, the undersigned views the overall evidence in a light most favorable to the claimant, thus, the limitations in Finding 5, above, are more restrictive than those given by Dr. Ozment and restrict the claimant to the light exertional level.

Turning to the claimant's anxiety, the objective medical findings and admitted activities and abilities support the limitation in 5, above, that the claimant is limited to occasional contact with the public, coworkers, and supervisors.

The evidence of record includes diagnoses of anxiety, which were based on the claimant's multiple complaints of anxiety, as well as reports of difficulty functioning due to anxious/fearful thoughts, compulsive thoughts, a depressed mood, difficulty concentrating, difficulty falling asleep, difficulty staying asleep, easy startling, excessive worry, fatigue, poor judgment, racing thoughts, and restlessness, all of which he notes were exacerbated with conflict or stress, lack of sleep, social interactions, and traumatic memories (See Exhibits 4F, 5F, 6F,

7F, and 9F). On other occasions, the claimant has noted that his panic attacks might be the source of his stomach problems (Exhibits 8F and 9F). A review of the record reveals examination findings that have included moderate dysphoria, fidgeting, anxiety, and an inappropriate mood and affect (Exhibits 3F, 8F, and 9F).

Records also note, however, that the claimant denied treatment from a mental health professional, lived with his parents, had contact with his children, denied paranoia and hallucinations, and indicated he was able to perform a wide range of activities, including activities of daily living, household chores, yard work, and laundry, as well as preparing meals, shopping, watching television, driving, and attending church (Exhibits 3F and 8F). Additionally, examination findings from the relevant period of adjudication note repeatedly normal examination findings, including proper orientation, cooperation, an appropriate mood and affect, normal judgment and insight, neat grooming and dress, good hygiene, and the ability to perform various concentration intensive activities, including serial sevens, mathematical calculations, count and spell backward, repeat 6 digits forward and 4 digits backward, and recall 3 of 3 objects after 5 minutes (Exhibits 2F, 3F, 4F, 7F, 8F, and 9F).

The aforementioned objective findings do not support a determination that the claimant is disabled by his anxiety. Although the evidence of record includes complaints, diagnoses, and treatment for anxiety, as noted above, the record also includes a litany of essentially normal mental status examination findings, including proper orientation, cooperation, an appropriate mood and affect, normal judgment and insight, neat grooming and dress, and good hygiene, as well as the ability to perform activities that demonstrate intact memory and concentration.

Additionally, the claimant's admitted and indicated activities and abilities are inconsistent with his allegations of disabling symptomology. The claimant notes that he is generally able to perform his personal care and has appeared properly groomed and dressed on occasion (See Exhibits 9E and 3F). He watches television, prepares meals, performs household chores, and helps care for his family members (Hearing Testimony and Exhibits 9E, 3F, and 8F). He lives with his parents and takes care of his uncle, shops, and attends church, and notes no specific problems with these interactions (Hearing Testimony

and Exhibits 9E and 3F). Additionally, he notes no problems getting along with others, no problems getting along with authority figures, notes he has never been fired or laid off for an inability to get along with others, and his uncle indicates that he sometimes attends a local community center (Exhibits 6E and 9E). The claimant is able to perform concentration-intensive activities that include performing household chores, performing yard work, caring for his parents and uncle, attending church and the community center, and watching television, driving, shopping, and handling his own finances (Hearing Testimony and Exhibits 9E, 3F, and 8F).

The aforementioned objective findings and admitted and indicated activities and abilities do not support a determination that the claimant is completely disabled by his mental impairments. Instead, the relatively normal examination findings from Dr. Bennett, as well as the indications and admissions that the claimant lives with his parents, cares for his uncle, and drives, performs household chores, and performs yard work all support a determination that the claimant can perform jobs consistent with the limitations in Finding 5, above. The limitation to occasional contact with the public, coworkers, and supervisors accommodates the moderate impact the claimant's anxiety has on his social functioning. The relatively minimal evidence of record simply does not support additional limitations.

As for the mental opinion evidence, the undersigned has considered the March 2015 opinion of Thomas Bennett, Ph.D., who notes that the claimant's abilities to relate to others, function independently, understand and carry out instructions, and respond appropriately to supervisors and coworkers are all average (Exhibit 3F). Although this opinion does not couch the claimant's abilities to perform the mental requirements of work in the commonly used terms of a function by function mental residual functional capacity, the undersigned notes that this description of "average" does not indicate that the claimant has limitations in any of these areas, which is generally consistent with the normal findings from Dr. Bennett's psychological examination of the claimant, the other relatively normal mental status findings in the record, and the claimant's relatively normal admitted and indicated activities and abilities. Again, however, the undersigned views the evidence of record in a light most favorable to the claimant, which includes the claimant's allegations of operating in a fairly isolated manner. Accordingly,

14

the undersigned gives Dr. Bennett's opinion considerable weight, but again views the evidence in a light most favorable to the claimant.

Finally, the undersigned also notes the third party observations provided by the claimant's uncle (Exhibit 6E). The claimant's uncle is not a medically acceptable treating source and any opinion regarding the claimant's ability to work full-time in a competitive environment is an opinion reserved to the Commissioner (20 CFR 404.1513, 404.1527, 416.913, and 416.927). His observations, which often echo the claimant's allegations of disabling symptomology such as problems driving, completing tasks, and concentrating, also indicate that the claimant has abilities inconsistent with disabling impairments, such performing household repairs and chores, performing yard work, shopping, and attending church and the local community center (See Exhibits 6E and 9E). Thus, any observations indicating the claimant is disabled are inconsistent with the overall record evidence. Accordingly, the undersigned has considered the observations of the claimant's uncle but gives them little weight.

In sum, based upon a review of the medical evidence and the claimants admitted activities and abilities, the undersigned finds the overall evidence of record is inconsistent with the claimant's allegations of totally incapacitating symptomatology. The record fails to document persistent, disabling loss of functional capacity resulting from the claimant's severe impairments. The above residual functional capacity assessment is supported by the overall evidence of record, including objective evidence, opinion evidence, and the claimant's indications and admissions as to activities and abilities. After considering the entirety of the record, the undersigned concludes that the claimant can perform a range of work consistent with that set forth in Finding 5, above.

(Tr. 13-22).

## V. DISCUSSION

Eligibility for DIB and SSI benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if the claimant is

15

unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation in determining whether the claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

Atchison asserts that the ALJ erred in making her assessment that he was not disabled because she did not clearly comprehend his mental and physical conditions. (Doc. 16 at p.1). He seems to argue that, because he has been under a doctor's care for his gastrointestinal issues and his anxiety issues and has taken medication for these conditions for many years, the ALJ's finding could not have been based on the proper law or on substantial evidence. The Commissioner, on the other hand asserts that the ALJ provided valid reasons for

her findings, that those findings are supported by the applicable law and by substantial evidence, and that the ALJ's conclusion that Atchison was not disabled was not in error. (Doc. 17 at pp. 6-10).

After reviewing the medical records submitted, the opinions of examining and consultative physicians, function reports, and other forms/questionnaires completed by or on behalf of Atchison and considering the testimony given by Atchison and a vocational expert at the hearing, the ALJ applied the five-step sequential evaluation to determine whether Atchison was disabled, as defined by the Act, during the relevant time period. The ALJ concluded that: (1) Atchison was not engaged in substantial gainful activity; (2) he did have several severe impairments; (3) his severe impairments, singularly or in combination with each other and/or with his non-severe impairments, did not meet or equal an impairment in the Listing of Impairment in the regulations; (4) he did not have the RFC to perform his past relevant work; but (5) in light of his RFC, age, education and work experience, there are other jobs that Atchison could perform.

The primary question presented by Atchison seems to be whether the ALJ's assessment of his medical condition in formulating his RFC was based on substantial evidence. "In assessing whether a claimant is disabled, an ALJ must consider the medical opinions in a case record together with the rest of the relevant evidence received." *Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 870 (11th Cir. 2016) (citing 20 C.F.R. § 404.1527(b)). In addition to the medical evidence, the ALJ is to consider the claimant's daily activities when evaluating the symptoms and severity of an impairment. *Id*. at 871 (citing 20

C.F.R. § 404.1529(c)(3)(i)). A thorough review of the ALJ's decision reveals that the ALJ in this case did take into consideration, not only medical opinion evidence, but the totality of the medical evidence, as well as Atchison's written and oral accounts of his daily activities. Atchison attached a medical record to his filing in support of his claim in this Court that he indicated had not been presented to the ALJ; however, this Court's review of the transcript reveals that the medical report at issue was in the record and considered by the ALJ. (Tr. 407-09). The ALJ here actually included more stringent restrictions in his RFC than those placed by the medical doctors, restricting Atchison to light work with a further restriction to only occasional contact with the public, coworkers, and supervisors.

It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. *See Chester*, 792 F.2d at 131. This Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. Having reviewed the ALJ's decision and the transcript and considered the arguments made by Atchison, the Court finds that the ALJ's determination that Atchison was not disabled during the relevant time period is supported by substantial evidence and based on proper legal standards.

## **CONCLUSION**

Based on the foregoing, it is **ORDERED** that the decision of the

Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **27th** day of **October, 2017**.

                                s/P. BRADLEY MURRAY
                                **UNITED STATES MAGISTRATE JUDGE**